PEORIA STONE & MARBLE WORKS, Appellant, v. S. B. SINCLAIR, CORA M. SINCLAIR, HAWKEYE LUMBER COMPANY, WILLIAM BURNSIDE & SON ET AL.

**Real property:** FIXTURES: MORTGAGES: PRIORITY OF LIENS. A frame
1 building resting upon stone and brick piers and occupied by the owner as a shop is a part of the realty, and machinery therein,

parts of which are attached to the building and other parts resting upon the floor, but connected by belting or otherwise with the power operating the plant, all used in connection with the business, are also a part of the realty, and the building and fixtures will pass under a mortgage describing the land.

**Chattel mortgages:** RECORDING: NOTICE. The recording of a chattel mortgage covering a building and machinery forming a part of the realty is not notice to a subsequent mortgagee of the realty; and the recital in a real estate mortgage of incumbrances of a specified amount is not notice to the mortgagee of a chattel mortgage covering a part of the property.

**Mortgages:** PRIORITY OF LIENS. The owner of real property can not convert an integral part of it into personalty merely by an election to call it personalty; nor can he create a lien by the execution of a chattel mortgage which will in any way affect the lien of a prior mortgage on the realty.

*Appeal from Mahaska District Court.*—Hon. W. G. Clements, Judge.

TUESDAY, FEBRUARY 15, 1910.

ACTION to foreclose a chattel mortgage on a frame building occupied as a planing mill and the machinery therein, given by defendants, S. B. Sinclair and Cora M. Sinclair, his wife. The other defendants named in the title claim liens upon the building and machinery as part of the real estate on which the building is located under real estate mortgages given by Sinclair and his wife. The court denied any relief to plaintiff on the mortgage, but rendered judgment against defendants Sinclair and his wife for the amount of the promissory note for which the chattel mortgage was given as security. Plaintiff appeals.—*Affirmed.*

*H. H. Sheriff,* for appellant.

*Irving C. Johnson,* for appellee Hawkeye Lumber Co.

*William Burnside & Son,* for other appellees.

McClain, J.—In 1902 defendant Sinclair and his wife executed to William Burnside & Son a mortgage on lot four of block twenty-five in Oskaloosa, which was then and continued up to the time of the trial to be the homestead of the Sinclairs. On this lot, beside the dwelling house, was a frame building occupied by Sinclair as a carpenter shop. Subsequently this shop was enlarged for use as a planing mill, and, as thus enlarged, it was a frame building about forty by one hundred feet in size, resting on stone and brick pillars deeply embedded in the soil. Heavy machinery for woodworking processes was installed in the building, some of the pieces being attached to the building, others resting on the floor, but all connected by belting or otherwise with the motive power used to operate the plant, and all of it used in the business. In 1907, while the mill and machinery were in this condition, the Sinclairs gave to plaintiff a chattel mortgage to secure a note of about $500 which plaintiff seeks to foreclose, covering the building and machinery therein. In 1908 the Sinclairs executed to the Hawkeye Lumber Company a real estate mortgage on lot four and lot three, adjoining it, to secure the payment of $2,500, in which there was this clause after the description of the property: "except incumbrances to the amount of $3,800 now existing." The question presented on this appeal is whether plaintiff by its mortgage which was duly recorded at the time of its execution in the chattel mortgage records of the county acquired a lien upon the planing mill and machinery superior to the liens of the Hawkeye Lumber Company and Wm. Burnside & Son under their real estate mortgages.

There can be no question under the evidence but that prior to the execution of the chattel mortgage to plaintiff the planing mill and the machinery therein were so at-

tached to the realty that they were a part of the premises

1. **Real property: fixtures: mortgages: priority of liens.** described as lot four. The building rested upon piers of stone and brick. The character of the building and foundation precluded any assumption that the structure had been erected for a temporary purpose and with the intent to subsequently remove it. The machinery permanently installed in the building for use and connected with the motive power was a part of it. *Ottumwa Woolen Mills Co. v. Hawley*, 44 Iowa, 57; *Thompson v. Smith*, 111 Iowa, 718; *Fletcher v. Kelly*, 88 Iowa, 475; *West v. Farmers' Mut. Ins. Co.*, 117 Iowa, 147; *State Security Bank v. Hoskins*, 130 Iowa, 339. As against Burnside & Son, holding the mortgage on the realty, the Sinclairs could not by electing to treat this building and machinery as chattels create a superior lien. *Adams v. Beadle*, 47 Iowa, 439.

The contention as against the Hawkeye Lumber Company is that it took its real estate mortgage with notice of the chattel mortgage, and therefore subject to it. This

2. **Chattel mortgages: recording: notice.** contention is based on the recording of the chattel mortgage and the recital in the lumber company mortgage that it was subject to $3,800 of incumbrance. But, if we are correct in holding that the planing mill and machinery were part of the realty, then the recording of a mortgage thereon as chattel property would give no notice to a subsequent mortgagee of the realty. Surely a purchaser or mortgagee of real property has no occasion to examine the chattel mortgage records. *Bringholff v. Munzenmaier*, 20 Iowa, 513; *Adams v. Beadle*, 47 Iowa, 439. As to the recital of incumbrances to the amount of $3,800, it is sufficient to say that the Hawkeye Lumber Company was only put on its guard as against incumbrances on the realty, not as against chattel mortgage incumbrances or attempts to create such incumbrances. It does not appear in the record what the incumbrances were on lots three and four. The burden of proof

of actual notice was upon the plaintiff. *Carson & Rand Lumber Co. v. Bunker,* 83 Iowa, 751. There is nothing in the record to show that the lumber company had actual knowledge of the chattel mortgage, or that any inquiry suggested by the exception of incumbrances would have disclosed to it the existence of such mortgage. Much is said in the argument for appellant as to trade fixtures, but there is no occasion to discuss the rules of law on that subject. The planing mill and machinery erected on lot four by the owner thereof were, as already indicated, so attached to the realty as to become a part thereof, and no question as to trade fixtures arises under the facts.

We are unable to see how the mortgage to plaintiff could have been of any validity for any purpose. An owner of realty can not convert an integral part thereof into personalty merely by his election to call it personalty. Some things which are in their nature chattels, but may or may not become a part of the realty on which they are placed, dependent on the intention of the owner, may no doubt be so treated that they do not become a portion of the realty, but, when the acts of permanent annexation are unambiguous, mere intention is not to be considered. *State Security Bank v. Hoskins,* 130 Iowa, 339.

3. MORTGAGES: priority of liens.

There is no authority for the claim that the owner of realty can convert a permanent structure erected thereon, such as a house or barn, into personal property merely by executing a chattel mortgage thereon, or can create a lien by doing so. The enforcement of such a lien would involve the sale and removal from the realty of an integral part thereof which could not be permitted.

The decree of the trial court is *affirmed.*